## LEONARD J. TEPPER *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 16, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.    Street Railway.    United States Mail.    Practice, Civil,* Exceptions.

Although a street railway company in operating a postal car carrying the United States mail is required to exercise the same degree of care toward travellers on the highway as in operating other cars on the streets, it is not error for the presiding judge at the trial of an action for personal injuries caused by a collision with such a car, after giving proper instructions as to the due care of the plaintiff and the negligence of the defendant, to call the attention of the jury to the provision of U. S. Rev. Sts. § 3995, making it a criminal offence knowingly to obstruct or retard the passage of the mail, and by way of illustration of the comparative rights of carriers of mail to refer to the provisions of R. L. c. 16, § 143, in regard to the right of way in the streets of "United States forces or troops, or any portion of the militia parading or performing any duty according to law," providing that the carriage of the United States mail shall not be interfered with; and, if the plaintiff has testified that he did not know that the car with which he came in collision was a mail car, this does not make this portion of the charge inapplicable to the case if the plaintiff also has testified that he saw the car while at a distance of one hundred and forty feet from him before he turned to cross the defendant's track, as the jury may believe in spite of the plaintiff's testimony to the contrary that he knew the car to be a mail car.

In an action against a street railway company for personal injuries from a collision with a postal car owned and operated by the defendant engaged in carrying the United States mail, if the judge in his charge has commented on the character of the postal service and the plaintiff, who has testified that he did not know the car to be a mail car, is apprehensive that this testimony has been overlooked by the judge, he should call his attention to the matter and make this the ground of a specific objection to the charge or a request for further instructions, and in the absence of such objection or request he has no ground for exception if the jury find for the defendant.

TORT by the driver of a delivery wagon in the employ of a meat and provision dealer for personal injuries caused by a collision with a car of the defendant shortly after nine o'clock on the morning of March 2, 1900, on Washington Street in Boston at or near the corner of Acton Street.    Writ dated March 31, 1900.

In the Superior Court the case was tried before *Fessenden,* J.

Among other evidence there was evidence tending to show that the defendant at the time of the accident had entered into a contract to carry the United States mail; that the car which came

into collision with the plaintiff's team was what is known as a mail or postal car, and that at the time of the accident mail was being carried by the defendant in the car. The plaintiff testified that he did not know that it was a mail car until after the time of the collision. The jury took a view of Washington Street at the point where the accident occurred, and also took a view of the mail car which came into collision with the plaintiff's team.

At the close of the evidence the defendant, among other requests, asked the judge to rule as follows:

"This car was exclusively engaged in carrying United States mail and for that reason had the superior right of way in the street over the team driven by the plaintiff and the plaintiff was bound to give the car an unobstructed and clear opportunity to pass without attempting to cross in front of it, as and when he did so attempt."

The judge refused to make this ruling. After instructing the jury that the plaintiff must prove that he was in the exercise of due care and that the motorman of the defendant was negligent, the judge charged the jury in regard to the subject of the foregoing request as follows:

"In order to determine this, gentlemen, [the due care of the plaintiff and the negligence of the motorman] you must get at the circumstances of the case. These are very simple, very plain, very easy to understand. The motorman was upon this United States mail car, bound to take the car through the streets with all reasonable speed, confined to the tracks in the street, and could not go in any other way; had a car which he had a right to drive, a car which must be driven by this, and was being driven by this electric power. You will not require impossibilities of the motorman, but he is bound to exercise care when he is driving the car through the streets. He is not driving a car in which passengers are being carried. You do not have that question to deal with. It is not a question of the care of the person or of the corporation with reference to passengers. It is the care with reference to people on the street. The plaintiff was driving along the street. The plaintiff had the right to drive along the street and, exercising proper care, having regard to all the circumstances, he had a right to cross the street. He had a right to cross the tracks of the defendant company.

" The defendant apparently, there seems to be no question about this, had a contract with the United States government to carry mail, to carry the United States mail matter. That would give certain special rights under certain circumstances, to the United States government and to those persons employed in carrying the mail. No person can interfere or obstruct or hinder the passage of the mail. It is a penal offence under the laws of the United States for any one knowingly to do so.

" There is another situation, set of circumstances, which may throw a little light, although it may perhaps be very little, upon the matter under consideration. You all of you know that the troops have to parade in the streets at times, the United States troops march through here. We have had them come over from the Charlestown Navy Yard sometimes. Then the State militia is called upon at times to march through the streets. Ordinarily they have the right of way over everything, as it is called. Under our statutes the militia and these people have the right of way. But they cannot interfere in such a way as to obstruct or hinder the passage of the United States mail or the fire department, an engine going to a fire. You can understand matters of that sort, suppose there is a fire, an engine on its way to the fire, the militia or the United States troops have no right to hinder or to obstruct. So no one has the right to hinder or delay or obstruct the passage of those engaged in carrying the United States mail. This does not however, gentlemen, mean that the United States mail carriers may occupy exclusively the street. They are to do it considering all the circumstances, they are to do it in a proper way. This car had a right to go along the street. It has a right to go along the streets and no one had a right to hinder or obstruct or oppose it. But it does not mean because of that, that no one has a right to cross the street under any and all circumstances. It means simply this, that persons have no right to use the street in such a way as to obstruct, hinder or delay the passage of the car. That is all it means.

" Now, having that in mind, keeping in mind that the United States mail carriers have this privilege, what were the circumstances then? Did the motorman who was then engaged in carrying the United States mail, did he act in an unreasonable way? Did he conduct himself in such a way that you would say

that he did not, considering the privilege of carrying the mail and the rights involved, that he did not exercise proper care? That is a very simple question for you to answer. The defendant says he did. That he did everything that a motorman could have done under such circumstances and did more than to exercise proper care, that he exercised a very high degree of care, that the circumstances of the accident were such as to show that there was no fault to be attached to him.

"That is the position of the defendant. It is not for the defendant to prove this. It is for the plaintiff to prove that the motorman did not act with proper care. The plaintiff says that he did not. That he did not stop his car quickly enough, that he did not get it under control quickly enough. These matters will be for your determination, I can express no opinion about them."

After further instructions in regard to the due care of the plaintiff, and after referring to certain evidence in regard to the condition of the car after the collision, the judge concluded his charge upon the question of liability as follows:

"After all, the question is was the motorman in the exercise of due care, or rather is it shown that he was not in the exercise of a proper degree of care, and the second question as to whether the plaintiff himself was in the exercise of a proper degree of care."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*E. R. Anderson,* (*A. T. Smith* with him,) for the plaintiff.

*W. B. Farr,* for the defendant.

SHELDON, J.    The only question raised in this case is upon the plaintiff's exception to the instructions given to the jury with reference to the conceded fact that the car which came into collision with the plaintiff's team was a mail or postal car engaged in carrying United States mail. At the close of the evidence the defendant asked the judge to rule in substance that the plaintiff had no right to attempt to pass in front of this car. The judge declined to give this ruling, but did instruct the jury, among other things, that in order to determine the question of the plaintiff's care and the motorman's negligence, they must get at the circumstances of the case, and added the particular state-

ments which are set out in the bill of exceptions. It is not denied that on the evidence the usual issues of due care and negligence were for the jury.

The plaintiff contends that the instructions given practically amounted to saying that the United States mail cars, so far as their operation is concerned, have some peculiar rights in the streets, and that a less degree of care may be exercised in running them than in running other cars on the street. But no such statement as this is found in the charge, and we do not think that the jury could have so understood it. The statement that no person could interfere with or obstruct or hinder the passage of the mail, that it would be a penal offence under the laws of the United States for any one knowingly to do so, was not in itself incorrect. *United States* v. *Thomas*, 55 Fed. Rep. 380. It is provided by statute that "any person who shall knowingly and wilfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier carrying the same, shall, for every such offence, be punishable by a fine." U. S. Rev. Sts. § 3995. The plaintiff objects that the statute applies only to persons who knowingly and wilfully obstruct or retard the passage of the mail or its carrier, that is, to those who know that the acts performed will have that effect and perform them with the intention that such shall be their operation, *United States* v. *Kirby*, 7 Wall. 482, 487, and argues that this part of the charge was inapplicable to the case because the plaintiff testified without contradiction that he did not know that this was a mail car. But by using the word "knowingly" the judge added the very qualification on which the plaintiff now insists; and in view of the plaintiff's testimony that he saw the car while at a distance of one hundred and forty feet from him and before he turned to cross the defendant's track, the jury might have believed, in spite of his own testimony to the contrary, that he knew this to be a mail car.

The illustration in the charge as to the comparative rights of the carriers of mail and of United States forces and troops in passing through the streets did not go further than the provisions of our statute. "United States forces or troops, or any portion of the militia parading or performing any duty according to law, shall have the right of way in any street or highway through

which they may pass, provided the carriage of the United States mails, the legitimate functions of the police, and the progress and operations of fire engines and fire departments shall not be interfered with thereby." R. L. c. 16, § 143. St. 1893, c. 367, § 120. Moreover, this was given simply as an illustration, a circumstance which might throw some little light upon the matter under consideration. And the judge finally left, in unmistakable language, the whole conduct of both the plaintiff and the motorman to the jury, for them to determine as to the negligence or due care of each.

Taking all the language of the judge into consideration, we do not think that it could have misled the jury, as the plaintiff contends, into believing that the motorman had the right to run his car through the streets in a different manner from any other car, or without regard for the safety of the people upon the streets. The effect could not have been greater than to call the attention of the jury to the statute, and to instruct them that both the plaintiff and the motorman were bound to act, and that each of them had a right to expect the other to act, with regard to its provisions. If the plaintiff was apprehensive that his testimony that he did not know this to be a mail car had been overlooked, he should have called the attention of the judge to this matter. In the absence of any specific objection to the charge or of any request for further instructions, we are of opinion that the present exception cannot be sustained. *Dixon* v. *New England Railroad,* 179 Mass. 242, 249. *McKee* v. *Tourtellotte,* 167 Mass. 69.

*Exceptions overruled.*